UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:14-CR-35-GFVT-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| JERRY BARCOL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 81), the Court considers reported violations of supervised release conditions by Defendant Jerry Barcol.

**I.**

Judge Thapar entered a judgment against Defendant in May 2015 on his guilty plea to one count of being a felon in possession of a firearm. D.E. 45. He was sentenced to 92 months of imprisonment to be followed by three years of supervised release. *Id*. Defendant was released on April 7, 2021. His conditions were modified at that time to include an updated version of the condition requiring that he submit to searches based on reasonable suspicion. D.E. 79.

In August 2021, the United States Probation Office ("USPO") reported that Defendant had violated his release conditions. *See* D.E. 80. The USPO reported that, on July 23, he had submitted a urine screen that tested positive on instant testing for cocaine. Defendant admitted he used cocaine on July 16 and July 18, but denied any other use. The USPO referred him to treatment

1

and obtained an additional condition that he undergo four weekends of intermittent confinement. *Id*.

## II.

On August 27, 2021, the USPO submitted the Supervised Release Violation Report ("the Report") that initiated these proceedings. It charges two violations. Violation #1 charges a Grade C violation of the condition that Defendant refrain from unlawful use of a controlled substance. According to the Report,

> On August 16, 2021, USPO Allison Biggs and I responded to the home of Jerry Barcol and met with Barcol, who was home alone. During the home visit, Barcol provided an unobserved urine screen, which tested positive for cocaine. He denied use, stating it must still be in his system from when we tested him before. Barcol was informed that was not possible. The urine specimen was sent to Alere Laboratories for further testing. On August 21, 2021, the results returned from Alere Laboratories as positive for cocaine.

Violation #2 charges a Grade B violation of the condition that requires that Defendant not commit another federal, state, or local crime. Based on the cocaine use described in Violation #1, Violation #2 alleges that Defendant's possession of cocaine amounted to a felony violation of KRS § 218A.1415—first-degree possession of a controlled substance.

The Report also explains:

> Mr. Barcol is currently employed through Iron Workers Local 44 verified via paystubs. Barcol was initially seen for treatment with Awareness and Discovery and only an assessment was sought as Mr. Barcol advised that he didn't need treatment. He further informed the undersigned officer that he has never been addicted to drugs or alcohol; it was never a habit for him; he just hung out around the wrong people; and, he previously sold drugs and didn't use them. An assessment was completed by Awareness and Discovery. No further treatment was warranted based on the inability to render a Substance Use Disorder diagnosis. Since his initial relapse, in early August 2021, he has been referred back to treatment.

The Report requested a summons, and a summons was issued ordering Defendant to appear

on September 17.

Meanwhile, on September 10, the USPO issued a Supplemental Supervised Release Violation Report (the "First Addendum"), adding two new charged violations.

Violation #3 charges a Grade C violation of the condition that Defendant refrain from unlawful use of a controlled substance. According to the First Addendum:

> On September 8, 2021, a text was sent to Barcol instructing him to report to the probation office on September 9, 2021, by 3:30 p.m. for a urine screen. He did not respond to the text. On September 9, 2021, the undersigned officer left Barcol a voicemail advising him to report to the probation office for a urine screen. At approximately 11:21 a.m., Barcol sent a text message asking if he could report the following day as he had an appointment. Barcol was informed that he could not and would need to report before 3:30 p.m. Barcol reported to the office later in the day and a urine screen was collected. It was positive for cocaine. After some discussion, he admitted to using cocaine approximately three days prior to the office visit. He cited that he just gave up after being served with the summons, as he believed he was going to prison.

Violation #4 of the First Addendum charges a Grade B violation of the condition that requires that Defendant not commit another federal, state, or local crime. Based on the cocaine use described in Violation #3, Violation #4 alleges that Defendant's possession of cocaine amounted to a felony violation of KRS § 218A.1415—first-degree possession of a controlled substance.

The First Addendum also reported that Defendant was continuing to work. Additionally:

> Mr. Barcol continues in treatment and is meeting with a contracted provider. During a conversation with the provider on September 9, 2021, he informed that Barcol told him that the positive result in August is from his use in July. Both the therapist and the undersigned officer have informed Barcol that is not possible.

The First Addendum requested issuance of a warrant, and Defendant was arrested.

The Court conducted an initial appearance on the Report and First Addendum pursuant to Rule 32.1 on September 17, 2021, and set a final hearing following a knowing, voluntary, and

3

intelligent waiver of the right to a preliminary hearing. D.E. 89. At the initial appearance, the United States moved for interim detention; Defendant argued for release. *Id*. Based on the heavy § 3143(a) defense burden, the Court found that Defendant failed to justify release and remanded Defendant to the custody of the United States Marshal. *Id*.

A final hearing was convened on September 22, 2021. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 91. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all four violations. *Id*. The government established all four violations under the standard of 18 U.S.C. § 3583(e).

But Defendant was not sentenced at that hearing. Instead, the government moved to continue the remainder of the final hearing for sixty days. The government noted that Defendant had a good job. His cocaine use "came out of the blue." He was "dabbling" with drugs, not in "the throes of addiction." He was generally cooperative with Probation. Even so, Defendant's denials and subsequent use after being caught once (along with his lack of cooperation with treatment) were concerning. The government asked that Defendant be released, with increased drug testing and enrollment in an outpatient treatment program. This opportunity would allow Defendant to show whether his recent drug use was "an aberration" or a significant problem that would warrant a more onerous penalty. The government was hopeful Defendant was motivated to get himself back on track, especially given he had a good job that could keep him out of trouble.

The defense agreed and explained that "emotional situations" had led to Defendant's drug use. And getting caught using cocaine exacerbated those issues. The defense argued that the time he had spent in jail prior to the hearing had been a wake-up call. Defendant had made "great strides" since his release, despite his serious criminal history.

The Court accepted the recommendation with reservations. Defendant was released on his existing conditions with the addition of increased substance-abuse testing and a requirement that he comply with intensive outpatient treatment. He was ordered to appear again on November 22 for the remainder of the final hearing.

On November 19, 2021, the USPO issued a Second Supplemental Supervised Release Violation Report (the "Second Addendum"). It charges two more violations. According to the Second Addendum,

> On November 17, 2021 at approximately 8:33 a.m., a text message was sent to Mr. Barcol directing him to report to the office by 3:30 p.m. that day for a urine screen and to limit his fluid intake prior to his arrival. At approximately 1:00 p.m. that same date, he sent a text advising that he was working in Dayton and carpooled with others to work. He asked if he could just provide a urine screen with the treatment provider that evening. Barcol was told to plan to report to the office the following day. Later that same day, I responded to Solutions in Living and met with one of the therapists. I was able to confirm that Mr. Barcol was scheduled to respond there that evening for treatment. I asked that they collect a urine screen on him and I would still plan to collect one the following day.
>
> On November 18, 2021, Mr. Barcol sent a text advising that he had received my voicemail and wondered if he had to come to the office for a urine screen as the treatment provider collected a urine specimen last night. I advised him that he still needed to report to the office and should report by 4 p.m.
>
> Later on November 18, 2021, Mr. Barcol reported to the office. Almost as soon as I met with him, he advised that he screwed up, citing that he had a disagreement with his cousin and used cocaine again. A urine screen was collected and it was positive for cocaine. Sample was forwarded to Alere Laboratories for confirmation. Mr. Barcol signed an admission form stating that he used cocaine on November 17, 2021. Mr. Barcol was advised that the Court would be notified of his non-compliance.

Based on this cocaine use (later verified by laboratory testing[1]), Violation #5 in the Second Addendum charges a Grade C violation of the condition requiring Defendant to refrain from

---

[1] On December 2, the Court received the lab report, which indicates a positive for cocaine metabolite.

unlawful use of a controlled substance.

Violation #6 of the Second Addendum charges a Grade B violation of the condition that requires that Defendant not commit another federal, state, or local crime.  Based on the cocaine use described in Violation #5, Violation #6 alleges that Defendant's possession of cocaine amounted to a felony violation of KRS § 218A.1415—first-degree possession of a controlled substance.

The Second Addendum also reported:

> Since Mr. Barcol's release, he has been participating in intensive outpatient treatment through Solutions in Living in Erlanger, Kentucky.  He has passed random urine screens, collected through their agency; however, after speaking to personnel on November 19, 2021, I learned that the urine screens are not physically observed.  Apparently, a female stands near the donor and listens for suspicious noises.  Personnel advised that they are saddened that Barcol has used again as he has been an active participant in treatment.
>
> Contact was made with personnel of Iron Workers Local 44.  Personnel advised that Barcol was laid off from his job on November 11, 2021 but was dispatched to another job on November 15, 2021.  Barcol informed personnel on November 15, 2021 his vehicle had broken down outside of Lexington, Kentucky and his girlfriend was on her way to pick him up.  As such, he didn't believe he would make it into work that day.  Personnel advised they have not heard from Mr. Barcol since that date.  It should be noted that Mr. Barcol did inform the undersigned officer that he was working for someone else but I do not have any particulars regarding the company (name, rate of pay, hours, etc.).

The Second Addendum requested a warrant.  The warrant issued, and Defendant was arrested when he reported to Court on November 22.  The final hearing was continued until the next day and converted to an initial appearance on the violations in the Second Addendum.  D.E. 99.  Defendant waived his right to a preliminary hearing on the new charges and a final hearing was set. The government moved for detention; Defendant did not argue for release.  He was remanded to custody.

At the final hearing on December 2, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 100. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #5 and #6. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both violations as described in the Second Addendum. The United States thus established both violations under the standard of section 3583(e).

### III.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g), a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct constitutes Grade B violations for Violations # 2, #4, and #6, and Grade C violations for Violations #1, #3, and #5. Given Defendant's Criminal History Category of VI (the category at the time of the conviction in this District) and Grade B violation,[2] Defendant's range, under the Revocation Table of Chapter 7, is 21 to 27 months. Given the statutory maximum of 24 months, the effective Guidelines Range is 21 to 24 months.

---

[2] See U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

7

A court also may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Defendant's original conviction carries a maximum term of supervised release of three years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(b).

## IV.

The final hearing ended up with a jointly recommended penalty. The government argued for a below-Guidelines sentence of twelve months' incarceration, followed by the remaining available 24 months of supervised release. Upon hearing the government's recommendation, the defense adopted it as well.

The government first admitted it had been mistaken at the previous final hearing. Defendant's cocaine use was not a fluke; he has a real drug problem. Defendant seemed to be hardworking. He is motivated because his girlfriend is expecting to birth his child soon. Defendant has had a good working relationship with his probation officer. Aside from the August 16 specimen, Defendant admitted his cocaine use each time he was caught. The government said it previously failed to realize the import of a prior Georgia bond revocation for cocaine use in 2013. PSR ¶ 46. This incident conflicted with Defendant's self-report that he had only used cocaine on two or three occasions, with the last use 25 years prior to his PSR interview. *Id*. ¶ 70. Despite Defendant's "deep-seated" issue with cocaine, the government was hopeful Defendant can overcome it.

The government argued that the Guidelines Range was too high under the circumstances.

This is an unusual case in that Defendant's criminal history does not resemble that of the drug traffickers the Court typically sees on drug-use violations. Defendant's criminal history is driven by theft-type offenses committed over a five-to-six-year period. Unlike so many on this docket, Defendant has no long history of being an armed drug trafficker. The harms of his criminal history (theft and fraud) are different from the harms of his count of conviction (firearm possession) and of the violation conduct (cocaine use).

The government acknowledged that the trust breach was severe and revocation is necessary. Defendant used cocaine yet again in November even after being given a six-week reprieve to prove himself before sentencing. That Defendant used cocaine again with a two-year prison sentence hanging over his head demonstrates the severity of his addiction.

The government argued that, given Defendant's positive qualities, Defendant needs supervision and treatment more than prison. As for general deterrence, the government argued that a year in prison is adequate to deter a person from using cocaine. As for specific deterrence, missing the birth of his child will be a punishment and a strong motivator to improve. The government argued that the supervision period will protect the community because Defendant, a hard-working family man, will do well if he can just stay off cocaine.

The defense endorsed the government's recommended penalty. The defense argued that Defendant had become a leader in his family, especially a financial leader, supporting several people with his difficult but well-paying job. This put a lot of pressure on him and led to depression. Defendant was also attending treatment after work and paying for it himself. Defendant also did well in prison, becoming a leader, such as being a welding instructor and a member of the softball team. The defense argued that, now that Defendant realizes the extent of

9

his problem, he is primed to overcome it.

Defendant addressed the Court. He apologized to the Court, the prosecutor, his lawyer, the probation officer, and his girlfriend. He said he clearly has a drug problem and he feels better for admitting it. He was thankful for the 12-month recommendation because he feared a longer sentence might cause him to lose his union card. He acknowledged he had hurt his family. But he said he was not in a downward spiral. Unlike others who use drugs when they are down and in trouble, he tends to be tempted when things are going well.

## V.

The Court has evaluated the entire record, including the Supervised Release Violation Report, First Addendum, Second Addendum, their accompanying documents, the argument presented at the final revocation hearing, and the sentencing materials from the underlying Judgment, including the sentencing transcript. The Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of Grade B violations also means that revocation is recommended under the Guidelines. USSG § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall

10

revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). Although this is Defendant's first revocation, the trust breach is unusually severe. Defendant was caught using cocaine in July (he admitting using it twice), but he was given an intermittent-confinement condition rather than revocation proceedings. D.E. 80. Defendant tested positive again in August, but denied use, leading the USPO to seek revocation and request a summons. He tested positive again in September (knowing he was due to appear in Court soon), leading to the First Addendum. Defendant's final hearing was continued to give him six weeks to show this use was an anomaly. But it was not. Defendant failed a drug test again in November. Furthermore, at his original sentencing, Judge Thapar noted that Defendant could have faced drug charges in addition to the firearm charge, given the circumstances of his arrest. D.E. 46 at 4-5.

The Court must also take into account the nature and circumstances of Defendant's underlying conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). According to the PSR, "Law enforcement officials utilized a confidential informant (CI) to make several controlled purchases of suspected methamphetamine, oxycodone and a firearm from Jerry Barcol," who "has been convicted of multiple felonies." PSR ¶ 7. This is serious conduct, but, as noted, it differs from his criminal history, which otherwise is driven by theft-type offenses.

The Court must consider the need to protect the public and deter criminal conduct. Defendant has not posed an especially strong risk to the public, and the Court agrees that two years of supervision, if successful in rehabilitating him, will be most effective. Twelve months of incarceration is adequate to provide general and specific deterrence for this type of conduct.

Another factor concerns the need for treatment. Both parties (and Defendant) recognize the need for drug addiction and/or mental health treatment, but the existing conditions are adequate to address these needs.

Also important to consider are Defendant's history and characteristics. The Court considers all the arguments made by the parties. Defendant was otherwise doing well on supervision. He worked hard at his job and supported his family. He admitted most of his detected cocaine usages. His criminal history differs from the typical defendant on this docket due to the paucity of drug activity. He has motivating reasons to be productive going forward and raise his child. But Defendant must be brutally honest with himself and devote himself fully to overcome his addiction.

Ultimately, twelve months of incarceration is just barely adequate to address the key issues here, which are the breach of the Court's trust and the need to deter criminal conduct.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration sentence of twelve months. This is below the Guidelines Range of 21 to 24 months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*,

552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the recommendation reflects the parties' faith that Defendant has what he needs to be a productive, law-abiding citizen if he can only stay away from cocaine. The twelve-month sentence will provide deterrence. The supervision period will protect the public and help keep him on track. Upon release, he will be evaluated for drug abuse and mental heath treatment. Defendant's criminal history is driven by conduct different from his revocation conduct. The Court finds this jointly recommended penalty is sufficient, but not greater than necessary, to address the pertinent penalty factors.

## VI.

Based on the foregoing, the Court **RECOMMENDS:**

(1) That Defendant be found guilty of all six violations.

(2) Revocation with a term of imprisonment of twelve months, followed by 24 months of supervised release, under the same conditions previously imposed.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FOURTEEN DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court

and Court of Appeals. *See See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 3rd day of December, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge